## DONALD MACLEAN v. PATRICK FITZSIMONS AND JOHN V. MORAN.

*Contract—Construction—Bills and notes—Principal and surety— Fraud—Equity jurisdiction.*

1. Complainant indorsed three notes for defendants' traveling salesman, due in one, two, and three years respectively, given to secure an alleged shortage of $2,000 in his accounts, defendants threatening to discharge him unless such shortage was paid or secured. Defendants *verbally* agreed, in case complainant would indorse the notes, to retain the salesman in his position, and retain from his salary $60 per month during each month until the maturity of the notes. At the request of the salesman, who was fully advised of the foregoing facts, complainant indorsed the notes, which were delivered to the defendants, who executed and delivered to complainant an agreement to retain the $60 per month, and indorse it on the notes. The salesman was retained for about four months, and the agreed

sum applied on the notes, when he was discharged *without sufficient cause*, of which fact complainant had no notice or knowledge until after the maturity of the first note, he having relied upon the representations and agreement of the defendants in the premises. He thereupon filed a bill, setting up the foregoing facts, in which he prayed that he might be released from his indorsements, and that the notes might be delivered up and canceled, so far as the same affected him, and for an injunction to restrain defendants from enforcing the indorsements, and from transferring the notes, which were negotiable. The defendants demurred generally, claiming that the notes and written agreement must be construed together, and that they formed a complete contract, and could not be changed by parol evidence of contemporaneous agreements, which contract could not be construed into a promise to retain the salesman in their employment until the notes were paid.

In overruling the demurrer, the Court held that the circumstances surrounding the making of the notes are to be applied in arriving at the intention of the parties in entering into the agreement, and that what is plainly implied from the language used in the written agreement is as much a part thereof as if expressed therein; and that, applying these rules, there is no difficulty in deciding that it was a part of the *written* agreement that the salesman should be retained in defendants' employment until the notes were paid, subject to the contingencies of his voluntary leaving, or of his discharge *for cause*, or incapacity to work, or his death, in which event complainant would be bound by his contract of indorsement, discharged of all conditions.

2. In such a case equity has jurisdiction to grant the relief prayed for, irrespective of the solvency or insolvency of the maker of the notes, and thus prevent complainant's being made liable upon his indorsements by the transfer of the paper to *bona fide* holders, and from being harassed by suits in which he could not interpose the defense set up in his bill.

Appeal from Wayne. (Reilly, J.) Argued April 18, 1890. Decided April 25, 1890.

Bill to discharge complainant as indorser of certain notes, and for their cancellation, as far as his liability as indorser is concerned. Complainant appeals from decree dismissing bill on general demurrer. Decree reversed,

with right to answer, etc. The facts are stated in the opinion.

*Russel & Campbell* (*Otto Kirchner*, of counsel), for complainant, contended for the doctrine stated in the opinion.

*Keena & Lightner* (*Don M. Dickinson*, of counsel), for defendants, contended:

1. The notes and contract must be construed together; citing *Sutton v. Beckwith*, 68 Mich. 303, 310; *McNamara v. Gargett*, Id. 454, 458; *Francis v. Barry*, 69 Id. 311; and they form a contract which cannot be varied by oral evidence of contemporaneous agreements; citing *Adair v. Adair*, 5 Mich. 209; *Savercool v. Farwell*, 17 Id. 308; *Martin v. Hamlin*, 18 Id. 364; *Hyde v. Tenwinkle*, 26 Id. 95; *Cline v. Hubbard*, 31 Id. 238; *Ortmann v. Bank*, 39 Id. 519; *Coon v. Spaulding*, 47 Id. 162; *Kelsey v. Chamberlain*, Id. 241; *Bearss v. Preston*, 66 Id. 15; *Walsh v. Martin*, 69 Id. 35.

2. Were the guarantee continuing, or for an indefinite amount, the fact of Beattie's greater indebtedness might release complainant; but nothing is alleged to show how Maclean is affected by the increased indebtedness. He was not liable for it, was not asked to pay it, and none of Beattie's salary was applied for that purpose. The fraud was committed by Beattie, and unless participated in by defendants, which is not alleged, complainant is not released; citing Baylies, Sureties, 276; *Casoni v. Jerome*, 58 N. Y. 315; *Ins. Co. v. Clinton*, 66 Id. 326; *Schooldist. v. Dreutzer*, 51 Wis. 153; *Stoner v. Millikin*, 85 Ill. 219.

3. The discharge of Beattie was, so far as appears, a lawful act, and the surety is not released, though injuriously affected thereby; citing Brandt, Surety, § 200; *Ross v. Clore*, 3 Dana, 189; and it was the duty of defendants to discharge him, and they were not required to give complainant notice; citing Brandt, Surety, § 368, and cases cited; *Detroit v. Weber*, 26 Mich. 285.

4. The bill does not make a case calling for equitable relief, in this:

    *a*—Fraud is not sufficiently alleged. Impliedly it is admitted in the bill that defendants did not know of Beattie's larger shortage, and granting that they made the statements as alleged, they were honest about it; citing *Bridge Co. v. Van Etten*, 36 Mich. 210; *Conway v. Ellison*, 14 Ark. 363; and, in case of a written contract, representations made *bona fide* must be in the contract to be relieved against; citing *Turner v. Nav. Co.*, 2 Dev. Eq. 236; *Miller v. Cotten*, 5 Ga. 347.

*b*—But equity does not interfere merely because fraud is alleged. The jurisdiction is limited (except in cases peculiarly equitable, as in fiduciary relations) by the requirement of inadequacy of a legal remedy; citing *Hagenbuch v. Howard*, 34 Mich. 3; *Teft v. Stewart*, 31 Id. 367; *Bridge Co. v. Van Etten*, 36 Id. 211; and in such cases an allegation of insolvency of the defendant is necessary; citing *Smith v. Short*, 11 Iowa, 523; *Tomlinson v. Rubio*, 16 Cal. 207; *Stevenson v. Fayerweather*, 21 How. Pr. 449.

5. In this case the defendants are thoroughly responsible, and there is no allegation to the contrary in the bill, and the claim of jurisdiction because two of the notes are negotiable, and not due, is untenable; citing *Thayer v. Swift*, Har. Ch. 433; *Edwards v. Mining Co.*, 38 Mich. 50; *Hile v. Davison*, 20 N. J. Eq. 228.

CHAMPLIN, C. J. The defendants interposed a general demurrer, for want of equity, to a bill of complaint filed by complainant, in which he states that, prior to October 6, 1885, defendants were copartners in the wholesale grocer business under the name of Beatty, Fitzsimons & Co., and had in their employ Robert Beattie as a traveling salesman; that, shortly prior to the date above, they had ascertained that Robert was behind in his accounts about $2,000, and threatened to discharge him unless he paid or secured them for the amount of the shortage; that Robert applied to complainant to indorse his notes in amount sufficient to cover such shortage, which complainant refused until he interviewed Fitzsimons in regard to the matter; that Fitzsimons represented to complainant that the sum of $2,000 was the total amount of Robert Beattie's indebtedness, and that, unless it was paid or secured, they would be obliged to discharge him, and that, if he would indorse said notes, they would retain said Robert in his position with said firm, and retain out of his salary the sum of $60 a month during each month until the maturity of the notes, and also keep up the premiums upon a policy of insurance upon the life of said Beattie during the same period; that said Fitzsimons also

assured complainant that, by so doing, said Beattie would secure his position, and be enabled to earn a livelihood, and also make good the amount of his shortage.

That complainant, relying solely upon the representations of said Fitzsimons that the total of said Beattie's indebtedness was only $2,000, and that, if complainant would indorse Beattie's notes for that amount, said Beattie would be retained in his position, and enabled to pay the said indebtedness by having $60 deducted from his salary each month, indorsed three notes made by Beattie to said Beatty, Fitzsimons & Co., dated October 6, 1885,— one for $700, payable in one year; one for $700, payable in two years; and one for $600, payable in three years,— all bearing 7 per cent. interest, which notes were delivered to the defendants for the purpose above stated, and, as complainant is informed and believes, are still held by them; and the defendants thereupon executed and delivered to complainant the following instrument in writing:

"DETROIT, 6th Oct., 1885.

"DR. MACLEAN,—

"*Dear Sir:* Out of the monthly salary coming to Mr. Beattie we agree to retain sixty dollars ($60) per month, and indorse it on Robert Beattie's notes made and executed this day, and also to pay his premiums and assessments due on his life insurance during the time on which said notes are made on.

"Yours truly,

"BEATTY, FITZSIMONS & Co."

That after October 6, 1885, complainant heard nothing concerning said Beattie, and supposed that said defendants were carrying out their agreement as aforesaid, until October 9, 1886, when he received notice that the aforesaid note for $700, payable one year after date, had been pretested for non-payment; that he thereupon made inquiries of said defendants, and was informed by them

that, for about four months after the making of said agreement and notes, said Beattie was retained in his position, and $60 deducted each month from his salary to be applied upon said debt. The bill further charges that,—

"At the end of said four months, said Beattie had been discharged, because, as defendants claimed, his shortage, instead of being only $2,000 at the time of making said agreement and notes, was in reality much greater. And complainant avers that said Beattie was discharged by said defendants at the time and for the reason above stated, and that his indebtedness was in fact largely in excess of the sum of $2,000, which fact defendants knew, or might have known, at the time said notes were given. And complainant further avers that said Beattie was discharged in violation of said agreement and of complainant's rights. Complainant shows that no information was given him concerning the discharge of said Beattie until he discovered it as above stated, although his position as indorser for said Beattie was very materially and injuriously affected by the same.

"That the retention of said Beattie was an essential part of the agreement under which he indorsed said notes; and, by the discharge of said Beattie without notice of any kind to complainant, the defendants deprived complainant of the security assured him by said agreement.

"That said agreement and indorsements were further based solely upon the express representations of defendants that said Beattie's debt to them did not exceed $2,000, which representations were false in fact; and, had complainant known that defendants had misstated the amount of said debt, he would not have indorsed the said notes.

"Complainant shows that the said defendants, by their false representations as to the amount of said debt, and by their subsequent discharge of said Beattie without notice to complainant, and for the sole reason that his debt proved to be greater than had been supposed, have so impaired the security of complainant for his said indorsements, and, by their neglect to inform complainant of the real amount of said Beattie's debt when they discovered the same, have by their own acts so altered the position of complainant as indorser for said Beattie,

in a manner not contemplated by the said agreement, that complainant is of right discharged from all liability as such indorser, and is entitled to have his said indorsements canceled, and to be released from all liability on account of the same. Complainant avers that, by the violation of the terms of said agreement by defendants, he is released and discharged from all liability upon said indorsements, and is entitled to have the same canceled so far as the same affect him.

"And complainant shows that one of the notes so indorsed by him has already become due as aforesaid, and that the other two are liable at any time to be transferred by said defendants to third parties, who might hold the same and enforce them as *bona fide* holders against this complainant, unless the negotiation and transfer of said notes are enjoined by this court; and complainant is also exposed to the danger of having said defendants proceed against him at law on account of the note which has already become due, and upon the other notes at their maturity, if not paid by said Beattie, if not enjoined by this court."

The bill prays that complainant may be wholly released and discharged from his liability as indorser upon the notes, and that the notes be delivered up and canceled so far as the same affect him, and for an injunction against defendants' taking any steps to enforce said indorsements, and from indorsing or transferring said notes.

In support of the demurrer, the counsel for defendants contend that the notes and letter of October 6 must be construed together, and when so construed they form a complete contract, and cannot be varied by parol evidence of contemporaneous agreements; and, applying this doctrine to the case at bar, they say that the written contract cannot be construed into a promise to retain Beattie in defendants' employment until the notes were paid, because:

"1. The writing does not so state.

"2. There does not appear to have been any promise or obligation on Beattie's part to remain in the employment.

"3. Such a construction is not reasonable. There would be no purpose whatever for Maclean's indorsement, in such case."

The bill sets forth the circumstances surrounding the making of the notes. The circumstances are to be applied in arriving at the intention of the parties in entering into the agreement; and it has been said that the true intent and meaning is to be derived from the four corners of the instrument. It is also true that what is plainly implied from the language used in a written instrument is as much a part thereof as if it was expressed therein. Construing the writings in the light afforded by the circumstances under which they were given, and giving effect to what is plainly implied by the language used, we have no difficulty in deciding that it was a part of the agreement that Beattie should be retained in defendants' employ until the notes were paid. It is also implied, necessarily, from what is stated respecting the situation of the parties, that Beattie did promise to remain in the employment of defendants for the purpose of paying said notes from his earnings. The agreement could not be carried out, otherwise. The very purpose for Maclean's indorsement was that Beattie should feel bound to stay in defendants' employment, and discharge his duty satisfactorily, in order to relieve his friend, who had become surety for him, from liability. If he voluntarily quit or left, or was discharged for sufficient cause, or had become incapacitated to work, or had died, complainant would be bound by his contract of indorsement, discharged of all conditions.

Beattie was discharged by the defendants without sufficient cause, according to the statement of the bill, and was thereby prevented from performing and paying the notes from the avails of his services.

Of course, in considering the allegations of the bill up-

on general demurrer, all material facts stated, which are well pleaded, are taken as true and established. The bill upon its face makes a case for equitable relief. It would operate as a fraud upon complainant for defendants, after obtaining his indorsement upon the agreement that they would keep Beattie in their employment until the notes were paid by applying $60 a month of his salary to such payment, to discharge him without sufficient cause, and compel complainant to pay the notes.

It is urged that complainant has a complete remedy at law; that the invalidity of his indorsement is a defense at law, if sued upon the notes. The bill does not allege that Beattie is insolvent; and, if not, he has a complete remedy against him as the maker of the notes. Equity affords relief sometimes when there may be a remedy at law, if such legal remedy is inadequate or not immediately available. Here, if the notes not due should pass into the hands of a *bona fide* holder, complainant could not interpose the defense set up in his bill; and, to prevent being harassed by suits, and being made liable for the notes and costs, he has a right to have his indorsement canceled, and to injunctive relief against the transfer of the notes. This source of equity jurisprudence is sufficient to give the court jurisdiction, without considering the question of the solvency or insolvency of Beattie.

The decree of the circuit court should be reversed, and the cause remanded, with leave to defendants to answer in 20 days.

The other Justices concurred.