MORLEY v AUTOMOBILE CLUB OF MICHIGAN

Docket Nos. 107661, 107662. Argued May 5, 1998 (Calendar No. 6). Decided July 30, 1998. Rehearing denied 459 Mich 1204.

Mervin A. Morley and Linda C. Morley brought an action in the Ottawa Circuit Court against Automobile Club of Michigan, seeking uninsured motorist benefits arising from an accident involving a collision with another vehicle. The defendant denied the plaintiffs' claim on the ground that it had not been made within three years of the date of the accident as the policy required. Following a bench trial, the court, Wesley J. Nykamp, J., found that the contractual period of limitation was ambiguous and ordered the parties to proceed to arbitration. The Court of Appeals, MACKENZIE and R. L. TAHVONEN, JJ. (HOEKSTRA, P.J., concurring in part and dissenting in part), reversed in an unpublished opinion per curiam, finding that the three-year time limit was unambiguous and therefore enforceable (Docket Nos. 172969, 173000). The plaintiffs appeal.

In an opinion by Justice TAYLOR, joined by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, and WEAVER, the Supreme Court held:

The insurance policy unambiguously requires that an insured claim uninsured motorist benefits within three years of the date of the accident.

1. Insurance contracts require that a claim for benefits be made before entitlement can be established. Until a specific claim is made, an insurer has no way of knowing what expenses have been incurred, whether those expenses are covered losses, and whether the insured will file a claim at all. It is illogical to expect an insurer to formally deny an unperfected claim.

2. In this case, the contract required that the claim be made within three years of an accident, and the plaintiffs failed to do so until well after the contractual time limit had expired. The mere report of an accident would not give the insurer the basis to conclude that the tortfeasor did not have no-fault insurance. Thus, it could not have had the information necessary to deny the claim for uninsured motorist benefits, the condition precedent to invoking the next step, arbitration. Moreover, the plaintiffs neglected to take the steps that precede those they claim to be ambiguous, and are in no position to seize the alleged ambiguity as an excuse for failing

to file a claim. It was the plaintiffs' failure to claim uninsured motorist benefits until more than three years after the accident that caused the confusion they wish to attribute to the contract and precluded their recovery.

Justice CAVANAGH, joined by Justice KELLY, concurring, stated that while the insurance contract unambiguously requires that the demand for arbitration be filed within three years of the date of the accident, the clause, nonetheless, works an injustice on the insured.

Once an insurance company receives notice that an insured claims a third party to be insured, it should be required to toll the limitation period until it informs the insured that it disagrees. The other alternative for the insurance company, which is expressly contemplated under the contract, is that the insurance company must file for arbitration within three years of the accident, because only the insurance company knows whether it agrees with the policyholder that the third party is insured.

Because affording the plaintiffs equitable relief is not properly before the Court, this case either should be resubmitted to the Supreme Court or remanded to the Court of Appeals for the parties to brief whether equity requires the tolling of the limitation period under the circumstances.

Affirmed.

*Giddy & Associates* (by *Ronald J. Giddy*) for the plaintiffs-appellants.

*John A. Lydick* for defendant-appellee.

TAYLOR, J. This case presents a dispute regarding whether the insureds under a contract of automobile insurance failed to comply with the requirements of their policy and thus waived their claim for benefits. Specifically, defendant claims that it properly denied plaintiffs' claim for uninsured motorist benefits because the policy required that the claim be made within three years of the date of the accident and plaintiffs' claim was submitted after this deadline. Plaintiffs, in turn, argue that the three-year time limit is ambiguous and therefore unenforceable. The trial court agreed with plaintiffs, finding that the contrac-

tual period of limitation was ambiguous. Consequently, the trial court ordered that the parties proceed to arbitration of plaintiffs' claim. The Court of Appeals reversed, finding the contract unambiguous and the three-year time limit enforceable. We agree that the contract unambiguously requires that the insured make a claim for uninsured motorist benefits within three years of the accident and therefore affirm the decision of the Court of Appeals.

I

FACTS

Because this case presents a dispute regarding insurance coverage, it is helpful at the outset to understand the relevant parts of the policy at issue. The policy provides coverages required pursuant to Michigan's no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, e.g., personal protection insurance (PIP) benefits, property protection benefits, etc. These parties also contracted for supplemental coverage not required by the no-fault act, including uninsured motorist coverage.

In its general provisions, the contract requires that in the event of "an accident, occurrence or loss," the insured must give prompt notice of the time and place of the accident and the names and addresses of the parties involved. In addition to this simple notice requirement, the contract specifies additional duties imposed on the insured depending on what type of insurance benefits are claimed. For example, when claiming uninsured motorist benefits the insured must give written notice of the injury, submit to physical examinations and release of medical records, forward

legal documents to the insurer, and provide written notice of hit-and-run accidents when they occur.

In the section of the policy relating only to uninsured motorist benefits, the contract provides that if the insurer does not agree that the insured is entitled to these benefits a demand for arbitration (which would resolve disputes concerning the liability of the uninsured motorist or the damages attributable to him) or suit (which would resolve the insured's entitlement to uninsured motorist coverage under his policy) must be filed within three years of the date of accident.

The dispute arose in this case from an accident that occurred on November 28, 1987. Plaintiffs Mervin Allen Morley and Linda Carol Morley were involved in a collision with another vehicle driven by Leonard Mileskiewicz. At the time of the accident, plaintiffs' vehicle was insured by defendant ACIA. Immediately after the accident, plaintiffs believed that Mileskiewicz was also insured by defendant.[1] Plaintiffs filed suit against Mileskiewicz on October 20, 1988. In the course of this litigation, however, plaintiffs were notified by defendant, by letter dated May 9, 1989, that defendant was not Mileskiewicz' insurer at the time of the accident and therefore would not represent him in that litigation. On June 26, 1991, plaintiffs obtained a default judgment against Mr. Mileskiewicz in excess of $900,000.[2]

---

[1] Although Mileskiewicz had been insured by ACIA before the accident, and plaintiffs have repeatedly claimed that he was insured by defendant at the time of the accident, Mileskiewicz was, in fact, not insured at the time of the accident because he had failed to pay the renewal premium with ACIA and apparently had failed to obtain coverage from another insurer.

[2] While we do not have the lower court file regarding the litigation between plaintiffs and Mileskiewicz, correspondence between plaintiffs'

The instant litigation commenced on April 5, 1990, when, before obtaining the judgment against Mr. Mileskiewicz, but after being notified that defendant did not believe it was Mileskiewicz' insurer at the time of the accident, plaintiffs filed suit against defendant, claiming that defendant had unreasonably refused to fully pay PIP benefits due under their policy. No mention of the uninsured motorist benefits at issue here was made in plaintiff's initial complaint. Subsequently, on August 28, 1991, roughly three years and nine months after the accident and approximately two months after the default judgment had been entered against Mr. Mileskiewicz, plaintiffs claimed, for the first time, entitlement to the uninsured motorist coverage under their policy. Shortly thereafter, on October 25, 1991, defendant informed plaintiffs that they were not entitled to those benefits because plaintiffs had not claimed them within three years of the date of the accident, as required by the policy.[3]

---

counsel and counsel for ACIA indicates that as early as May 9, 1989, a default had been entered against Mileskiewicz.

[3] The uninsured motorist clause of the policy states in part:

If we do not agree with the Insured person(s):

that they are legally entitled to recover damages from the owner or the operator of an uninsured motor vehicle;

or

as to the amount of payment:

either they or we must demand, in writing, that the issues, excluding matters of coverage, be determined by arbitration. A Demand For Arbitration must be filed within 3 years from the date of the accident or we will not pay damages under this Part. Unless otherwise agreed by express written consent of both parties, disagreements concerning insurance coverage, insurance afforded by the coverage, or whether or not a motor vehicle is an uninsured motor vehicle are not subject to arbitration and suit must be filed within 3 years from the date of the accident.

Subsequently, on June 4, 1992, plaintiffs amended their initial complaint to include two new counts. In count II, plaintiffs claimed that the Mileskiewicz vehicle was insured at the time of the accident. In count III, plaintiffs claimed in the alternative that defendant had wrongfully refused to pay uninsured motorist benefits under the policy. The parties settled their dispute regarding the original PIP benefits claim, and on March 24, 1993, that portion of plaintiffs' complaint was resolved through a partial judgment in the amount of $22,281. However, the remaining two issues, i.e., whether defendant was Mileskiewicz' insurer at the time of the accident and alternatively whether plaintiffs were entitled to uninsured motorist benefits under their contract if Mileskiewicz was uninsured at the time of the accident, were submitted to the court for a bench trial on stipulated facts.

The trial court found that Mileskiewicz' vehicle was not insured at the time of the accident. Further, it found that, by providing notice of the accident under the general notice provision of the policy, plaintiffs had fully complied with their contractual obligations and defendant had therefore wrongfully denied coverage on the basis that the claim was late. The court found that the uninsured motorist clause of the contract was ambiguous with respect to who must request arbitration and how an insured would know that the defendant did not agree with plaintiffs' entitlement to these benefits, rendering a demand for arbitration necessary. Consequently, the trial court found that the three-year time limit for filing a demand for arbitration would not bar plaintiffs' claim for uninsured motorist benefits, even though the claim was made more than three years after the date

of the accident. On appeal, the Court of Appeals reversed, finding that the three-year time limit was unambiguous and therefore enforceable. We granted leave to appeal and now affirm the judgment of the Court of Appeals.

II

The issue presented in this case is a question regarding the import of a contractual term of an insurance policy. Such a question is a question of law that we review de novo. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 177; 405 NW2d 88 (1987); *Hewett Grocery Co v Biddle Purchasing Co*, 289 Mich 225, 236; 286 NW 221 (1939); *St Paul Fire & Marine Ins Co v Ingall*, 228 Mich App 101, 107; 577 NW2d 188 (1998).

As with any contract, we examine the instrument itself to determine its meaning. Thus, we enforce the contract as written if it fairly allows but one interpretation. *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 70-71; 467 NW2d 17 (1991).

In this case, we find that the contract at issue is not ambiguous as claimed by plaintiffs because it fairly allows but one interpretation, that being, as stated by the Court of Appeals: "[T]he policy is unambiguous in its requirement that a person claiming uninsured motorist benefits must do so within three years of the date of the accident." Unpublished opinion per curiam, issued June 11, 1996 (Docket Nos. 172969, 173000), slip op at 4. In particular, the contract requires that an insured make a specific claim for uninsured motorist benefits when it states: "A person

*claiming*[4] . . . Uninsured Motorists Coverage must[5] . . . ." (Emphasis added.)

Moreover, reinforcing this understanding is that another term in the uninsured motorist section of the contract contemplates that a specific claim be made. It is indicated that if the insurer does not agree that the insured is entitled to uninsured motorist benefits, suit or a demand for arbitration must be filed. Obviously, the insurer could not disagree with the insureds until a request for benefits was made, which in essence is a claim.

Consequently, we think it express that the contract itself requires that an insured actually claim entitlement to these uninsured motorist benefits. Furthermore, even if one accepts, arguendo, that this language is not express, it certainly is clear by implication that a claim must be made. In this regard the rule is that "what is plainly implied from the language used in a written instrument is as much a part thereof as if it was expressed therein." *Maclean v Fitzsimons*, 80 Mich 336, 343; 45 NW 145 (1890); *Draper v Nelson*, 254 Mich 380, 384; 236 NW 808 (1931).

In addition, not surprisingly, this Court's precedent reinforces the understanding that insurance contracts require a claim to be made for benefits before entitlement can be established. This Court has recognized this in other insurance contexts that "[u]ntil a specific claim is made, an insurer has no way of knowing

---

[4] Although the policy does not use the words searched for by our concurring colleague, i.e., that the insured "must file a claim" for uninsured motorist benefits, the policy language quoted above clearly conveys that meaning.

[5] As noted previously, this clause goes on to describe separate duties the insured must fulfill.

what expenses have been incurred, whether those expenses are covered losses and, indeed, whether the insured will file a claim at all." *Welton v Carriers Ins Co*, 421 Mich 571, 579; 365 NW2d 170 (1985). Indeed, in considering the whole topic of insurer denial of a claim our Court has said it is "illogical to expect the insurer to formally 'deny' an as yet unperfected claim." *Id.*; see also *Lewis v DAIIE*, 426 Mich 93; 393 NW2d 167 (1986).

Apart from the requirement that a claim be made, the contract also required that the claim be made within three years of the accident at issue.[6] This the plaintiffs failed to do because they did not file their uninsured motorist claim until August 28, 1991. Thus, because plaintiffs made their initial claim for uninsured motorist benefits well after the contractual time limit had expired, they were time barred from receiving uninsured motorist benefits.

In response, the plaintiffs would argue that their compliance with the contractual requirement, appearing in the general no-fault provisions of the contract, that they give immediate notice of the accident, is sufficient to qualify as a claim for the uninsured motorist benefits now in dispute. To merely consider

---

[6] The arbitration clause for uninsured motorist benefits indicates that if the insurer does not agree with the insured whether uninsured motorist benefits are due under the contract, a demand for arbitration or suit must be filed within three years of the date of the accident. Obviously this must mean the conditions precedent to arbitration, i.e., claim and denial, are intended to take place before arbitration or suit is filed.

Beyond the scope of this appeal, as the concurrence points out, are the hypothetical situations where the insured could secure equitable relief, such as where the carrier induces a misunderstanding by the insured of the insured status of the tortfeasor. However, the concurrence's discussion of this issue fails to acknowledge and recognize who it is who has the duty to determine if the tortfeasor is insured: the insured. It is not the insurance agency that has that responsibility.

the facts of this case, and, in fact, any imaginable case, makes the flaws of their argument quite apparent. The report of the accident that the no-fault claim procedure requires could not inform the insurer of the most obviously necessary fact to trigger uninsured motorist coverage, namely, that in the insured's view the tortfeasor was uninsured. Thus, as in our case, where all the defendant knew was that it was not Mileskiewicz' insurer, this mere report of an accident would not give it the basis to conclude that the tortfeasor, in violation of the statute that requires automobile insurance be carried, MCL 257.518, 500.3009, 500.3131; MSA 9.2218, 24.13009, 24.13131, did not have automobile no-fault insurance. Thus, it could not have had the information necessary to deny a claim for uninsured motorist benefits. This is important because this denial is the condition precedent to invoking the next step, which is arbitration. This outcome, of course, means that the plaintiffs' approach to this contract must be spurned because not to do so would make the contract unworkable. Such a result is something the parties could not have intended.

Plaintiffs further argue that the policy was ambiguous with respect to when a claim had to be submitted because both a demand for arbitration (which would resolve disputes concerning the liability of the uninsured motorist or the damages attributable to him) and suit (which would resolve the insured's entitlement to uninsured motorist coverage under his policy) must be filed within three years of the date of accident. They argue that because a suit might not be resolved before the expiration of the coterminous three-year period for filing a demand for arbitration, the contract cannot mean that plaintiffs are required

to file a demand for arbitration before the underlying coverage issue is resolved.

This argument is flawed under these facts because the plaintiffs neglected to take the steps that precede those that are claimed to be ambiguous. Therefore plaintiffs are in no position to seize the alleged ambiguity as an excuse for failing to file a claim. Moreover, while acknowledging that in some instances underlying coverage disputes might not have been resolved before the three-year time limit expires, this circumstance does not serve to make the time limit ambiguous and thus unenforceable. The reason for this is that any insured faced with a coverage dispute that is taking longer than three years would need only to file the demand for arbitration within the contractual time limit in order to preserve entitlement to uninsured motorist benefits. Certainly any insurer who claimed such a filing was ineffectual would be estopped because the insured was only complying with the contract's requirements.

That this concept was well understood by the plaintiffs and that indeed they were not frozen by the policy's alleged ambiguities can be seen by the fact that the claim letter plaintiffs' attorney eventually submitted stated: "If recovery is made in the future for which Auto club [sic] should receive a setoff or be reimbursed, then my clients will be happy to do so." This demonstrates rather plainly that plaintiffs understood that the contract contemplated a demand for benefits before the underlying issues had been resolved and further that the purported ambiguity created no ambiguity at all. What the policy called for, the plaintiffs effectively acknowledged they understood by what they said and did.

Plaintiffs further argue that the policy is ambiguous because it did not articulate the exact manner in which one would make a claim for uninsured motorist coverage. Had they made a timely claim in any manner, this technical argument would be better received. While the contract does not spell out the manner in which a claim for benefits should be made, what cannot be in doubt is that some indication that the insured felt entitled to utilize this coverage had to be sent[7] and that there was no timely indication in any form or manner submitted by the insureds here that they felt so entitled. Simply stated, no claim was made. After all, the common meaning attributable to the requirement of making a "claim" generally entails "a request or demand for payment in accordance with an insurance policy . . . ." *Random House Webster's College Dictionary*, p 249; *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 568; 519 NW2d 864 (1994) (courts may rely on dictionary definitions to find the meaning of terms used in a contract). Further, this Court has noted, in the similar context of no-fault insurance benefits required by statute, that an insured must make a specific claim for benefits sought. *Welton, supra*, 421 Mich 578-580; *Lewis, supra*, 426 Mich 103. Moreover, plaintiffs demonstrated that they were capable of filing a sufficient claim.[8] Thus, construing this contract by resolv-

---

[7] We express no conclusion regarding the exact parameters of what would constitute a specific claim for benefits, other than that mere notice of injury, without more, is insufficient. Under the stipulated facts of this case, it is clear no claim was made until after the three-year time limit had expired.

[8] It is undisputed that plaintiffs did in fact make a claim for uninsured motorist benefits by letter dated August 28, 1991. In fact, it appears when one carefully examines this case that they probably were not unclear that a claim had to be made, or how one should be made, but instead misread

ing any ambiguity in plaintiffs' favor demonstrates that plaintiffs were required to do no more or less than what they eventually, albeit belatedly, did do, that is, submit a request for the payment of the uninsured motorist benefits they believed they were entitled to under the contract.

Lastly, plaintiffs argue that the three-year time limit is not enforceable because the contract does not specify how the insured is to know that a disagreement exists, and thus that arbitration would be necessary. As we previously noted, this issue is not ripe because the lack of any indication that there was disagreement is directly attributable to the fact that plaintiffs' failed to make a claim for these benefits until after the time limit had passed. At its core, plaintiffs' argument here is that the contractual time limit should be tolled.[9] The fallacy of plaintiffs' argument is that it was their failure to claim uninsured motorist benefits that caused the confusion they wish to attribute to the contract. Plaintiffs need only have taken the obvious step, clearly contemplated by their contract, of requesting these benefits to avoid the situation now attributed to some ambiguity in the con-

---

the contract regarding when it had to be made. They seem to have erroneously concluded that the claim could not be made until it was finally determined that the tortfeasor was liable. This was incorrect because the contract only required that the plaintiffs felt they were legally entitled to the uninsured motorist benefits and that any claim had to be filed within three years of the accident. Consistent with this inexplicable misreading of the contract, plaintiffs held their uninsured motorist claim until after the liability of the tortfeasor was established pursuant to a default judgment. It is this error that lead to plaintiffs' difficulty.

[9] If plaintiffs, in fact, had made a timely claim for uninsured motorist benefits, but missed the three-year deadline for filing suit or a demand for arbitration because of some inaction or delay on the part of defendant, such a case might present a situation where tolling principles may afford plaintiffs relief. That is not the case here.

tract. Even in *Lewis*, where this Court cautioned against promoting insureds to file "precautionary" suits when their claims had been made, but not yet resolved, the Court noted that "the insured must seek reimbursement with reasonable diligence or lose the right to claim the benefit of a tolling of the limitations period." *Id.* at 102. Failing to request these benefits until more than three years after the accident precluded their recovery under the contract. We therefore affirm the judgment of the Court of Appeals.

Mallett, C.J., and Brickley, Boyle, and Weaver, JJ., concurred with Taylor, J.

Cavanagh, J. (*concurring*). I agree with the majority that the insurance contract unambiguously requires that the insured give notice to the insurance company that it is claiming uninsured motorist benefits within three years of the accident. I disagree that it requires the insured to "make a claim" for uninsured motorist benefits; however, for reasons stated below, I concur in the result reached by the majority.

The contract requires that the demand for arbitration be filed within three years of the date of the accident *if either the insured or the insurance company disagrees over the insured status of the third party.* I agree with the majority that this clause is unambiguous. However, I would find that the clause works an injustice against the insured.

In this case, the insurance company received notice that an accident took place and that injuries were involved. It received notice that the plaintiffs claimed that the third party was insured, and indeed provided

proof of insurance to the plaintiffs and the police.[1] However, the insurance company did not inform the plaintiffs that it disagreed with them over the insured status of the third party until May 1989, approximately one year and six months after the accident. All the while, the contractual limitation period was running against the Morleys solely because the insurance company waited to inform its insureds of the disagreement until one year and six months after the accident.

The policy language states, "If we do not agree with the Insured person(s): that they are legally entitled to recover damages from the owner or the operator of an uninsured motor vehicle . . . either they or we must demand, in writing, that the issues, excluding matters of coverage, be determined by arbitration." The problem in this case is that the insurance company did not set any limitation period for informing its insureds that it "[did] not agree" with the insured that the third-party vehicle was an uninsured vehicle. This allowed the insurance company to purposefully withhold telling its insureds that it disagreed with them until three years passed, or until the three-year limitation was significantly shortened.

The majority's interpretation of the contract means that in *every* accident, an insured must "file a claim," for uninsured motorist benefits, whether or not the policyholder knows that the vehicle is uninsured. It is obvious that, in this case, the majority would require the plaintiffs to have filed a claim for uninsured motorist benefits even though they had proof of

---

[1] Unfortunately for the plaintiffs, after the accident, a court determined that the proof of insurance was not in effect at the time of the accident.

insurance that later was found to be faulty. Requiring the insured to "file a claim" for *uninsured* motorist benefits rather than simply giving the insurance company "notice" it believed the third-party to be insured would be unfair and cumbersome. The plaintiffs in this case *did not know* the third party was not insured. It would be illogical, then, to require them to file for uninsured motorist benefits.

To settle the problem of the insured not knowing when the insurance company "disagrees," the majority states that the contract "expressly" requires that an insured actually claim entitlement to these uninsured motorist benefits. However, I can find no language in the contract that expressly states that the insured must "file a claim" for uninsured motorist benefits. I think the majority recognizes this weakness in its argument because it states: "[E]ven if one accepts, arguendo, that this language is not express, it certainly is clear by implication that a claim must be made." *Ante* at 466. As proof, the majority claims that "[o]bviously, the insurer could not disagree with the insureds until a request for benefits was made, which in essence is a claim." *Id.* I disagree. Why should a person file a claim for uninsured motorist benefits when he believes that the third party is insured and has proof of that insurance? The insurance contract could easily be interpreted to "imply" only that it must give the insured "notice" of an accident with another vehicle that claims to be *insured,* rather than requiring the insured to "file a claim" for *uninsured* motorist benefits, despite having proof of insurance from the third-party motorist. If it turns out, as in this case, that the proof of insurance is invalid, the *insur-*

*ance company* should give notice to the policyholder that it "disagrees" that the third party is insured.

Once an insurance company receives notice that an insured claims a third party to be insured, it should be required to toll the limitation period until it informs the insured that it "disagrees." The other alternative for the insurance company, which is expressly contemplated under the contract, is that the *insurance company* must file for arbitration within three years of the accident, because only the insurance company knows whether it agrees with the policyholder that the third party is insured. Neither scenario occurred in this case.

However, our grant order in this case specifically limited the question presented to "whether the trial court erred when it declared ambiguous the three-year limitation period contained in part IV of the policy of insurance." 456 Mich 909 (1997). Therefore, affording the plaintiffs equitable relief is not properly before this Court. As a consequence, I am compelled to concur in the result reached by the majority because I do not find the words of the contract to be ambiguous, I merely find them to be unjust. For this reason, I would either resubmit this case or remand it to the Court of Appeals and direct the parties to brief whether equity requires the tolling of the limitation period under these circumstances.

KELLY, J., concurred with CAVANAGH, J.