# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT FORD,

        Plaintiff,

v

WOODWARD TAP, INC., doing business as
SOUTH,

        Defendant-Cross Plaintiff,

and

RONALD TALLEY,

        Defendant-Cross Defendant,

and

RASOR LAW FIRM, P.L.L.C.,

        Appellant,

and

JONATHAN MARKO,

        Appellee.

UNPUBLISHED
December 7, 2017

No. 332473
Oakland Circuit Court
LC No. 12-128348-NS

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Appellant, nonparty Rasor Law Firm, appeals as of right the trial court's order denying appellant's motion to terminate a charging lien filed by appellee, nonparty Jonathan Marko, and granting appellee an equitable lien on a portion of the appellant's settlement proceeds from the underlying case. We reverse.

This case arises from the legal representation of plaintiff in the underlying action. The case was referred to appellee, who at the time was an employee of appellant. Appellee undertook the representation of plaintiff as an employee of appellant. Appellee stated that he "litigated the case from the beginning," and performed such tasks as investigating the claim,

taking depositions, and "[e]ngaging in settlement discussions with defense attorneys at junctures throughout the life of the case." According to appellee, he also "research[ed], draft[ed], and file[d] numerous motions including motions in limine, motions for spoliation of evidence, [and a] motion to declare witnesses unavailable." Appellee also stated that he successfully defended against a motion for summary judgment and argued an appeal before this Court.[1]

According to appellee, he had a fee-splitting agreement with appellant under which he received "25% of money generated on firm clients, and 40% of money generated on personal clients." Appellee stated that "[b]eginning October 1, 2015, [appellant] intentionally refused to remit all the monies due to [appellee] pursuant to the fee splitting agreement." Appellee characterized his not being paid as a constructive discharge and left appellant's employment. Shortly thereafter, another of appellant's attorneys took over the underlying case until it was settled. After the settlement, appellee then sent appellant an e-mail stating that he was asserting a charging lien on the settlement for "attorney fees and expenses."

Appellant moved the trial court to terminate the lien. In response, appellee argued that even if he was not entitled to a charging lien, he was, at the very least, entitled to an equitable lien. The trial court denied appellant's motion, finding that appellee was entitled to an equitable lien on "40% of the net attorney fees to be paid to [appellant] from the settlement proceeds in the instant underlying action." The trial court, citing *Warren Tool Co v Stephenson*, 11 Mich App 274; 161 NW2d 133 (1968), stated that Michigan law has "long established that an equitable lien can be created between parties when they agree that a clearly identified fund secures an obligation." It reasoned that appellee was entitled to an equitable lien on the settlement proceeds because, based on the parties' fee-splitting agreement, the settlement proceeds were an identifiable fund that secured appellee's obligation to work on the underlying case. The trial court further explained that "neither client approval nor a direct relationship with the client is necessary" to establish an equitable lien. Based on its finding of an equitable lien, the trial court declined to address whether appellee had a charging lien.

On appeal, appellant argues that the trial court erred by finding that an equitable lien was authorized in this case. We agree. "Whether a lien is authorized in a particular case is a question of law," which we review de novo. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008).

It is well established in Michigan jurisprudence that "[a]n equitable lien cannot be imposed . . . if the proponent has an adequate remedy at law." *In re Estate of Moukalled*, 269 Mich App 708, 719; 714 NW2d 400, 407 (2006), citing *Yedinak v Yedinak*, 383 Mich 409, 415, 175 NW2d 706 (1970); *Ashbaugh v Sinclair*, 300 Mich 673, 677, 2 NW2d 810 (1942). Here, the trial court failed to address whether appellee had an adequate remedy at law. However, our review of the record made it clear that he does. At trial and on appeal, appellee made numerous references to his "contract" with appellant and to appellant's "contractual" obligations to appellee. The trial court apparently agreed with appellee that the parties' had a contract, but the

---

[1] See *Ford v Woodward Tap, Inc*, unpublished opinion per curiam of the Court of Appeals, issued October 21, 2014 (Docket No. 316694).

trial court erred by finding that this contract authorized an equitable lien in this case because appellee had an adequate remedy at law. Indeed, if appellee was not granted an equitable lien, he could nonetheless collect the full amount of what he was allegedly owed by bringing a cause of action against appellant for breach of contract. Because appellee has an adequate remedy at law, the trial court erred by concluding that an equitable lien was authorized.

Appellee argues that a breach of contract action would not provide him with an adequate remedy because he "would be forced to incur costly litigation and long delays to vindicate his legal claims." However, we do not see how this affects the adequacy of appellee's remedy. While litigating a claim is certainly inconvenient, it may be necessary in this case to determine whether appellant and appellee had a contract, what the terms of that contract were, and whether appellant violated those terms.

Appellee also argues that pursuing a breach of contract action would be an inadequate remedy "given [appellant's] solvency issues." Appellee does not contend that appellant is insolvent; he only asserts that his legal remedy would be inadequate because appellant was having difficulty meeting certain financial obligations. Appellee cites no authority for the proposition that his legal remedy would be inadequate because appellant, a solvent party, failed to timely pay some of its bills. See *Liggett Rest Group, Inc v City of Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003). ("This Court will not search for law to sustain a party's position where that party neglects to cite any supporting authority for its claim."). And when considering only appellant's financial condition, as appellant does in his argument, there is authority to support that appellee would have a complete remedy at law so long as appellant was solvent.[2] See *Maclean v Fitzsimons*, 80 Mich 336, 344; 45 NW 145 (1890) ("The bill does not allege that Beattie is insolvent; and, if not, [the complainant] has a complete remedy against him as the maker of the notes."). While we understand appellee's concern, there is nothing in the record before us to warrant the conclusion that appellee would be unable to collect in full any damages that may be awarded to him from a favorable judgment for breach of contract against appellant. Therefore, appellee failed to establish that his legal remedy would be inadequate.[3]

---

[2] We emphasize that our decision should not be taken out of context. Equity grants a court "broad power to fashion relief as the circumstances require," *Madugula v Taub*, 496 Mich 685, 712; 853 NW2d 75 (2014), and we acknowledge that a party's solvency is not necessarily determinative of an opposing party's equitable claim. However, appellee's argument is that he is entitled to equitable relief based solely on appellant's financial condition, and on the record before us, we have no basis to conclude that a legal action against appellant, a solvent party, would not provide appellee with a complete and adequate legal remedy.

[3] Relying on *Warren Tool*, 11 Mich App at 297, appellee also argues that he should be granted an equitable lien because it would provide him with "a more complete remedy." However, we have no reason to conclude that an equitable lien would provide appellee with "a more complete remedy" than would a breach of contract claim. If appellee is entitled to a portion of the attorney fees from the underlying case, then he would be able to recover the same amount in an action for breach of contract as he would from his asserted equitable lien. And as we stated, we have no

Further, both the trial court and appellee rely heavily on this Court's decision in *Warren Tool* to argue that appellee is entitled to an equitable lien. However, the facts of *Warren Tool* are starkly different from the ones now before us, and to the extent that *Warren Tool* provides any guidance, we believe that it supports our conclusion that appellee has an adequate remedy at law.

In *Warren Tool*, the plaintiffs sought to hold the defendants personally liable "for the diversion of certain funds which [the defendants' defunct company] Stephenson Industries agreed to use to pay for work performed by [the] plaintiffs." *Warren Tool*, 11 Mich App at 276. Stephenson Industries accepted a bid from the plaintiffs to work on a project for Highway Products, Inc. (Highway), but the defendants refused the plaintiffs' request to assign them the Highway account. *Id*. at 277. Instead, in a letter to plaintiffs, "Stephenson Industries suggested an alternative security arrangement" in which Stephenson Industries promised payment to the plaintiffs from a check that Stephenson Industries would receive from Highway for order number 19064, which was the order that the plaintiffs were to fill. *Id*. at 277-278. In a second letter, Stephenson Industries indicated that it sent a letter to its bank "asking them to disburse our receipts from Highway Products, Inc., on their purchase orders 19064 . . . in favor of your company." *Id*. at 278. Thereafter, the plaintiffs began and completed the work. *Id*. However, when the check from Highway for order 19064 was obtained by one of the defendants, the former president of Stephenson Industries, he took the check, had it certified at the issuing bank, took it to another bank and exchanged it for eight cashier's checks, and then disbursed the cashier's checks between himself and his brother-in-law. *Id*. at 278-279. Afterwards, Stephenson Industries went bankrupt, and the plaintiffs filed suit seeking to hold the defendants personally liable. *Id*. The trial court ruled that the plaintiffs could not prove their claims against the defendants and "terminated with a judgment of no cause of action." *Id*. at 280. On appeal, the plaintiffs argued that they had an equitable lien on the money from the check from Highway for order 19064, and that the defendants "who participated in the destruction of that property interest [were] personally liable for" conversion. *Id*. This Court held that, based on the facts before it, the plaintiffs likely could have established that (1) they had an equitable lien on the money from the identified check and (2) the defendants were liable for conversion when they "deliberately obliterated [the] plaintiffs' interest in the check." *Id*. at 296-300. Accordingly, this Court remanded the case for a new trial to determine whether the defendants were personally liable to the plaintiffs for conversion. *Id*. at 303.

In the case now before us, any apparent inequities faced by appellee are clearly far less than those faced by the plaintiffs in *Warren Tool*. The *Warren Tool* Court emphasized that it was holding that the plaintiffs could likely establish an equitable lien based on the severity of the inequity, namely the defendants' intentional act of converting the check promised to the plaintiffs as security for their work.[4] The *Warren Tool* Court also explained that, had the

---

reason to conclude that appellant would fail or be unable to pay appellee the full amount of any potential award.

[4] In pertinent part, the *Warren Tool* Court explained as follows:

The Highway check, upon its receipt, became the focus of considerable cogitation at Stephenson Industries,—should it be deposited in the bank or should it be diverted? When it was diverted, Stephenson Industries did more than breach an ordinary agreement to pay. It deliberately destroyed the specific security which

defendants not taken action to deliberately extinguish the plaintiffs' interest in the check and instead "ignored or simply neglected" it, then "the result [of] that failure to deposit the check would have constituted only a breach of contract" against Stephenson Industries, not the defendants. *Id*. at 296. Such is the case here. If appellee is indeed entitled to 40% of the settlement proceeds pursuant to the parties' contract, and if appellant failed to take the proper action to ensure that appellee received what he was contractually entitled to, then the result is a breach of contract claim. And unlike in *Warren Tool*, appellee would receive a complete remedy from appellant in a successful breach of contract action. Thus, *Warren Tool* supports our conclusion that appellee is not entitled to an equitable lien because he has an adequate remedy at law.

Although the trial court did not rule on whether appellee was entitled to a charging lien, we may "exercise our discretion to review the issue as a question of law for which the necessary facts have been presented." *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014). We choose to do so and conclude that appellee is not entitled to a charging lien.

Attorney charging liens are recognized at common law. *George v Sandor M Gelman, PC*, 201 Mich App 474, 477; 506 NW2d 583 (1993). This Court in *George* stated that

> [a]n attorney's lien can be one of two kinds: (1) a general, retaining, or possessory lien, or (2) a special, particular, or charging lien. A general or retaining lien is the right to retain possession of all documents, money, or other property of the client until the fee for services is paid. The special or charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit. The attorney's charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services. [*Id*. at 476 (citation omitted).]

Attorney charging liens thus "automatically attach to funds or a money judgment recovered through the attorney's services." *Id*. at 477. And while attorney charging liens are a specific species of equitable liens, unlike equitable liens generally, they only "arise by reason of the lawyer-client relationship." *Warren Tool*, 11 Mich App at 284 n 5. "An attorney-client relationship must be established *by contract* before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995) (emphasis added).

---

plaintiffs, pursuant to assurance from Stephenson Industries, had relied on for payment. Plaintiffs did not extend general credit to Stephenson Industries and then afterward extract a promise of security. The record so far made indicates there never would have been any performance by the plaintiffs but for the representation that the letter to the bank was more than the ordinary promise to pay, that it was, indeed, security. To hold that Stephenson Industries merely breached a contract when it intentionally extinguished the interest in property, choate or inchoate, which it had previously purported to dedicate to plaintiffs, would be to enshrine form and to ignore substance. [*Warren Tool*, 11 Mich App at 296-297 (citations omitted).]

Here, it is undisputed that only appellant had an attorney-client relationship established by contract with plaintiff. Although appellee performed work for plaintiff's case, he did not have a separate contract with plaintiff; plaintiff's contract was only with appellant. Appellee could not assert an attorney's charging lien because his attorney-client relationship with plaintiff was not established by contract, so there was no basis for appellee to collect from plaintiff's settlement for his services. See *Warren Tool*, 11 Mich App at 284 n 5; *Plunkett & Cooney*, 212 Mich App at 329. If appellee is entitled to a portion of the settlement proceeds from the underlying case, appellee's remedy is against appellant for breach of contract. See *Berke v Murphy*, 280 Mich 633, 635-637; 274 NW 356 (1937) (holding that the plaintiff, an attorney, was entitled to recovery on a breach of contract theory against the defendant, also an attorney, where the defendant failed to pay the plaintiff a percentage of attorney fees that the defendant agreed to pay the plaintiff in exchange for the plaintiff's referring the case to the defendant).

Reversed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien