**McCLOREY et al.**

v.

**HAMILTON COUNTY BOARD OF ELECTIONS, Appellant;**
**Indian Hill Church Corporation, Appellee.**

[Cite as *McClorey v. Hamilton Cty. Bd. of Elections* (1998), 130 Ohio App.3d 621.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980138.

Decided Dec. 4, 1998.

*Schroeder, Maundrell, Barbiere & Powers* and *John W. Hust,* for appellant.

*Barron, Peck & Bennie* and *Rex A. Wolfgang,* for appellee.

PAINTER, Judge.

On November 6, 1990, plaintiff, Grace E. McClorey, injured herself when she fell on steps at the entrance to the premises of defendant-appellee, Indian Hill Church Corporation. The injury occurred after sunset when McClorey was

leaving the building. She fell after she stepped down and her foot came into contact with the side of a two-inch-thick mat that had been placed on a step by persons unknown.

When the injury occurred, defendant-appellant, Hamilton County Board of Elections, was leasing the church's premises as a polling place for its precinct, and, in fact, McClorey was at the building to vote on the evening of her injury. The written lease, which was drafted by the board, provided that the area of the building used for voting was to be vacated by the church on election days. The end of the lease contained the following language: "Liability Insurance is carried by the Hamilton County Board of Elections for voters, Election Officials, and property damage for the day of election."

McClorey filed a negligence lawsuit against the church and the board and alleged, among other things, that they had failed to provide safe egress from the building, failed to properly inspect the premises, and failed to illuminate the dangerous egress. After a bench trial, the trial court found the church and the board liable and awarded McClorey $45,000, plus $5,000 to her husband for loss of consortium. The court found the church and the board each to be fifty percent negligent. But the court held that the board had to indemnify the church and pay the church's attorney fees and costs. The court explained that the lease required the board to provide insurance "for" injuries to "voters." Construing the lease, the court determined that the board was obligated to provide insurance to cover liability for both the board and the church for injuries to voters on election days. Because the board did not provide this insurance for the church, the court held that the board had to indemnify the church.

The board now appeals the ruling on indemnification, asserting two assignments of error.[1] In the first assignment, it asserts that the trial court erred by concluding that its lease contractually obligated it to provide liability insurance for the church. The construction of written contracts is a matter of law.[2] Questions of law are reviewed *de novo*.[3] Upon review of the lease here, we agree with the trial court's construction of the contract.

Indemnity is the right of a party who has been compelled to pay what another should have paid to require reimbursement.[4] It arises from a contract,

---

1. We have *sua sponte* removed this case from the accelerated calendar.

2. *Long Beach Assoc., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208, 209.

3. *Id.*

4. *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 240, 513 N.E.2d 253, 256.

either express or implied.[5]   In the construction of a written contract, it will be read as a whole, and the intent of each part will be gathered from a consideration of the whole.[6]   The language and terms of the contract are to be given their plain, common, and ordinary meanings.[7]   But if the language is ambiguous, then a court must construe the language against the party who prepared the contract.[8]   Language is ambiguous if it is reasonably susceptible of two or more constructions.[9]

■ Here, the language of the lease, or contract, between the church and the board was clear:  the board was required to carry liability insurance for injuries to voters on election days.   The board claims that it should not be required to indemnify the church because the lease contained no language specifically stating that it agreed to indemnify, protect, and defend the church.   Also, it points out that the lease contained no statement obligating it to name the church as an additional insured under its policy.   But in our construction of the lease, we are guided by the principle that the absence of an express indemnification provision in a contract is not determinative "since the nature of a given provision is determined not by the label the parties give it, but rather by the legal effect of the provision as expressed by the parties in their agreement." [10]   We are also mindful that the board drafted the lease and, thus, any ambiguities must be construed against it.

Here, the lease is subject to two possible interpretations.   On one hand, as the church argues, the clause regarding the board's liability insurance for voters might mean that the board was required to provide insurance to cover liability for both the board and the church for injuries to voters.   On the other hand, as the board argues, the clause could merely be a plain statement of fact that the board had liability insurance for injuries to voters.   But the board's interpretation strains the plain meaning of the words.   A reasonable person would conclude that the board was undertaking to insure any loss relating to its operations on election days.

---

5.  *Id.*

6.  *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526.

7.  *Id.*

8.  *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 16 O.O.3d 441, 442, 406 N.E.2d 515, 517.

9.  *George H. Olmsted & Co. v. Metro. Life Ins. Co.* (1928), 118 Ohio St. 421, 426, 161 N.E. 276, 277.

10. `*Worth, supra,* at 241, 513 N.E.2d at 256.

Considering the lease's plain language that required the board to obtain liability insurance for voters and considering that the lease required the church to . vacate the area of the building used for elections, we conclude from the lease as a whole that the board intended to assume responsibility for injuries to voters on election days. We accept the church's interpretation that the board was required to provide insurance to cover liability for both the board and the church for injuries to voters. If we were to accept the board's interpretation of the lease, the language regarding liability insurance would be meaningless—mere surplusage. We hold that the best interpretation is that the board assumed liability for injuries to voters. The church was entitled to rely on the representation by the board that it had obtained liability insurance for the precise problem that occurred here. In other words, the board must now indemnify the church for damages sustained by McClorey, who was injured after voting in the building. We overrule the board's first assignment.

In its second assignment, the board asserts that it was only passively or secondarily liable for McClorey's injuries, while the church was actively or primarily liable, and that, under the common law, this means that it should be indemnified by the church. Essentially, it argues that there is an implied contract for indemnification by the church. But, here, we agree with courts that have held that an implied obligation cannot arise where an express contract covers a particular term.[11] Because we have already held that the board was expressly required under the lease to provide liability insurance for the church for injuries to voters, we conclude that we need not look for an implied contract of indemnification. The board's second assignment is not well taken. We note that indemnity is an equitable principle.[12] It would not be equitable to potentially require the church to indemnify the board under an implied contract when the board already expressly agreed to provide liability insurance for the church for injuries to voters.

Furthermore, even if we were to look for an implied contract of indemnity based on a primary-secondary or an active-passive relationship between the board and the church, one would not exist here. This type of implied contract of indemnity exists in situations where, like vicarious liability, a relationship exists between tortfeasors such that one tortfeasor may be held liable for the other's actions.[13] Courts have recognized this type of relationship in the follow-

---

11. See *Wente Constr. Co., Inc. v. Ins. Co. of Am.* (Sept. 30, 1985), Butler App. No. CA84–08–090, unreported, 1985 WL 7755.

12. *Anderson v. Olmsted Util. Equip., Inc.* (1991), 60 Ohio St.3d 124, 131, 573 N.E.2d 626, 632.

13. *Whitney v. Horrigan* (1996), 112 Ohio App.3d 511, 515, 679 N.E.2d 315, 317.

ing instances: wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant.[14] But indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence.[15]

Here, McClorey was an invitee on the church's premises when she was injured.[16] (The trial court originally granted summary judgment in favor of the church and the board. McClorey appealed. In reversing the trial court, this court held that McClorey was an invitee.) An owner or occupier of premises owes a duty to invitees to exercise ordinary care to maintain the premises in a reasonably safe condition and to warn of any dangers of which he knew or reasonably should have known.[17] This duty of care includes a reasonable inspection of the property for dangers [18] and extends to providing reasonably safe ingress or egress.[19]

The board argues that it did not breach any duty to McClorey because the church had control of the premises when McClorey was injured. But the parties' lease provided that the area of the building used for voting was to be vacated by the church on election days. Because the board had the power to admit or exclude voters from the premises, it had control of the building when McClorey was injured.[20]

The board also claims that it had no control of the illumination of the entranceway where the injury occurred because the lights were controlled by a timer to which the board did not have access. In addition, it claims that it was unaware that the mat that caused McClorey's fall was located on the step where the injury occurred. But the record reveals that, although a timer controlled some lights, other lights were controlled by a switch to which the board did have access. Also, even if the board was unaware of the mat that caused the fall, it

---

**14.** *Reynolds v. Physicians Ins. Co. of Ohio* (1993), 68 Ohio St.3d 14, 16, 623 N.E.2d 30, 31.

**15.** *Id.* at 16, 623 N.E.2d at 31–32.

**16.** *McClorey v. Hamilton Cty. Bd. of Elections* (Nov. 7, 1994), Hamilton App. No. C–930946, unreported, 1994 WL 680143.

**17.** *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167.

**18.** *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52, 7 O.O.3d 130, 130–131, 372 N.E.2d 335, 336.

**19.** *Skubovious v. Clough* (1996), 108 Ohio App.3d 316, 320, 670 N.E.2d 578, 581.

**20.** *See Pitts v. Cincinnati Metro. Hous. Auth.* (1953), 160 Ohio St. 129, 51 O.O. 51, 113 N.E.2d 869, paragraph four of the syllabus (control is "the power and the right to admit such individuals to the premises or to exclude them from the premises").

still had a duty to inspect and warn invitees such as McClorey of dangers in the entranceway to the building. In short, the board was actively negligent. A primary-secondary or active-passive relationship did not exist between the church and the board.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, P.J., and GORMAN, J., concur.