*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0047P (6th Cir.)
File Name: 03a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MEAD CORPORATION;
FACTORY MUTUAL
INSURANCE COMPANY;
NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH,

     *Plaintiffs-Appellants,*

     *v.*

ABB POWER GENERATION,
INC.,

     *Defendant-Appellee.*

No. 01-3574

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00351—James L. Graham, District Judge.

Argued: December 10, 2002

Decided and Filed: February 11, 2003

Before: BATCHELDER and MOORE, Circuit Judges;
COLLIER, District Judge.[*]

---

[*] The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

—————————

**COUNSEL**

**ARGUED:**   James W. Logan, Jr., LOGAN, JOLLY & SMITH, Anderson, South Carolina, for Appellant.  Christina L. Corl, CRABBE, BROWN & JAMES, Columbus, Ohio, for Appellee.  **ON BRIEF:**   James W. Logan, Jr., LOGAN, JOLLY & SMITH, Anderson, South Carolina, Daniel F. Edwards, THOMPSON & HINE, Columbus, Ohio, for Appellant.  Christina L. Corl, Larry H. James, CRABBE, BROWN & JAMES, Columbus, Ohio, for Appellee.

—————————

**OPINION**

—————————

   KAREN NELSON MOORE, Circuit Judge.   Plaintiff-Appellant Mead Corporation ("Mead") appeals the district court's grant of summary judgment for Defendant-Appellee ABB Power Generation, Inc. ("ABB Power").  Pursuant to a contract with Mead, ABB Power performed work on Mead's turbine and warranted the materials and labor.  After the warranty expired, the turbine failed.  Plaintiffs-Appellants Factory Mutual Insurance Company ("Factory Mutual") and National Union Fire Insurance Company of Pittsburgh ("National Union") paid Mead for its losses.  Mead, Factory Mutual, and National Union brought this action against ABB Power for breach of contract and for indemnity.

   The district court construed both causes of action as claims for breach of warranty and granted summary judgment to ABB Power because the contractual warranty had expired. Plaintiffs appeal the summary judgment, arguing that they stated a cause of action for breach of contract and for indemnity, independent of the warranty provision of the contract.  For the reasons set forth below, we **REVERSE** summary judgment for ABB Power on the breach of contract claim and remand this claim for further proceedings in the

Ambiguity arises, however, because Article 31 can be interpreted to limit the indemnity available under Article 16 to "third-party claims for injury . . . and claims for third party property damage." J.A. at 113 (Art. 31). Article 31 excepts from its limitations of liability "third-party claims . . . for which Seller may be liable subject to Indemnity Article 16 hereof," suggesting that the scope of Article 16 is limited *only* to those causes of action involving third-party injuries and damages. J.A. at 113. In light of Article 31, Article 16 could be read to provide indemnity only for third-party claims, which is the historical scope of usual indemnification provisions. *See generally Restatement of Restitution* § 76 & cmt. b (1937). Thus, the contract as a whole can be read consistently either to allow *or* disallow indemnity claims for Mead's direct losses caused by ABB Power's negligence.

Because the contract as a whole can be reasonably interpreted to support either Mead's or ABB Power's position regarding the scope of the indemnity clause, we conclude that the contract is ambiguous as to this issue. Under Ohio law, "[a]mbiguous contractual language will be construed against the drafter of the contract." *Lelux v. Chernick*, 694 N.E.2d 471, 473 (Ohio Ct. App. 1997) (citing *Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio 1980)). Because Mead drafted the contract, the ambiguity should be resolved in favor of ABB Power. *McClorey*, 720 N.E.2d at 956-57. Therefore, we affirm the district court's grant of summary judgment for ABB Power on the indemnity claim.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's decision as to Appellants' breach of contract claim, and **AFFIRM** the district court's decision as to Appellants' indemnity claim.

district court. We **AFFIRM** summary judgment for ABB Power as to the indemnity claim.

### I. BACKGROUND

In January 1992, Mead and ABB Process Automation, Inc. ("ABB Process") entered a contract for ABB Process to perform work on the Number 12 Turbine at Mead's Chillicothe, Ohio plant. Mead drafted the contract, pursuant to which ABB Process would provide "all labor, materials; design, architectural, engineering and other services; tools; supplies; machinery; equipment; transportation; administration; supervision and all other items and services necessary for the proper execution and completion of the work." Joint Appendix ("J.A.") at 65. Mead also drafted, and ABB Process agreed to, "General Terms and Conditions" that would govern their contract and Mead's orders for the purchase of equipment in August 1993. J.A. at 96-115 ("Terms and Conditions").

ABB Power assumed the contractual obligations of ABB Process in December 1994. Mead and ABB Power entered a supplemental agreement on January 3, 1995, making several revisions to the Terms and Conditions. Article 5 of this agreement replaced the original Article 4 warranty provisions in their entirety. On January 16, 1995, the parties entered a second supplemental agreement, again replacing the Article 4 warranty provisions. The amended warranty provisions provide:

4.1 Equipment supplied by seller is warranted against defects in material and workmanship for twelve (12) months after installation or eighteen (18) months following delivery to TMC or into storage, whichever period shall expire first.

4.2 Services will be performed in a workmanlike manner and recommendations for corrective action made in connection with technical investigations or inspections or the like, will be based on seller's best

judgment considering the facts then known. Such warranty shall extend for twelve (12) months from the date of completion of services.

4.3   Should any failure to conform with the applicable warranties appear during the specified periods seller shall correct such nonconformity, at its option and at its expense by repair, re-performance or replacement of the non-conforming work. . . . Repairs, re-performance or replacements pursuant to warranty shall not renew or extend the applicable warranty period, provided however, that any such repairs, re-performance or replacement of work shall be warranted for the time remaining of the original warranty or for one hundred and eighty (180) days, whichever is longer. . . .

\*\*\*

4.6   Except for seller's performance warranty stated below, the foregoing warranties are exclusive and in lieu of all other warranties of quality and performance and results, written, oral, or implied and except for seller's performance warranty stated below, all other warranties including any warranty of merchantability or fitness for a particular purpose are hereby disclaimed by seller and all equipment manufacturers.

J.A. at 124-25.

Although the contract states that these warranties are exclusive warranties, it also expressly states that Mead's rights and remedies under the contract "shall not be exclusive of, but shall be in addition to, any other rights or remedies available at law or in equity or granted in any other part of the Contract." J.A. at 93 (§ 37). The contract also requires the parties fully to comply with both the terms of the contract and "with all applicable Federal, state or local laws, codes, ordinances, rules, requirements, standards, regulations, orders . . . ." J.A. at 77 (§ 13). Moreover, ABB Power was contractually obligated to "indemnify and hold Purchaser . . .

breach of warranty by the purchaser."[3] *Id.* at 922. The district court relied on its interpretation of two aspects of the contract to support this conclusion: first, "Article 31 . . . indicates the intent that the indemnity provision apply to 'third party claims for injury (including death therefrom) and claims for property damage for which seller may be liable subject to [the indemnity provision]'"; and, second, the exclusive warranty provision of the contract precludes Appellants' indemnification claim, just as it precludes Appellants' breach of contract claim. *Id.*

We reach the same conclusion as the district court, but we base our decision on different reasoning. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985). We conclude that the contract is ambiguous as to whether it excludes from the scope of its indemnity provision losses incurred directly by Mead. Accordingly, because the contract is susceptible to more than one reasonable interpretation, we construe the ambiguous language against Appellants.

Article 16 does not explicitly limit its application to third-party claims. It provides for indemnification by ABB Power of losses "of every kind whatsoever to the extent caused by the negligence of Seller." J.A. at 107. This language is open to the interpretation that ABB Power is contractually obligated to reimburse Mead for direct injuries to Mead itself, and that Article 16 applies beyond third-party claims.

---

[3]The district court interpreted only the indemnity provision in this particular contract and did not decide whether, as a general matter, "indemnity provisions are limited to indemnity for third-party claims or also include disputes between the parties themselves." *Mead*, 141 F. Supp. 2d at 921. In *Battelle Memorial Institute v. Nowsco Pipeline Services, Inc.*, 56 F. Supp. 2d 944 (S.D. Ohio 1999), a district judge for the Southern District of Ohio held that, under Ohio law, an indemnity provision applies both to third-party reimbursement situations and to direct losses suffered by the contracting parties themselves. 56 F. Supp. 2d at 950-51. We decline to resolve this question of state law in this case, for we may decide this case on narrower grounds.

which Seller may be liable subject to Indemnity Article 16 hereof and as determined by a court of competent jurisdiction, Seller's aggregate liability hereunder for all claims of any nature arising out of this Agreement shall in no event exceed the contract price.

J.A. at 113. ABB Power argues that this provision limits the indemnity obligation to cases involving third-party claims for personal injury or property damage, while Appellants argue that Article 31 excludes from its limitation of liability only one class of claims permitted under Article 16 — third-party claims for injury and property damage.

An Ohio appellate court recently summarized principles of contract interpretation that have been articulated by the Supreme Court of Ohio as follows:

> In the construction of a written contract, it will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. The language and terms of the contract are to be given their plain, common, and ordinary meanings. But if the language is ambiguous, then a court must construe the language against the party who prepared the contract. Language is ambiguous if it is reasonably susceptible of two or more constructions.

*McClorey v. Hamilton Cty. Bd. of Elections*, 720 N.E.2d 954, 956-57 (Ohio Ct. App. 1998) (footnotes omitted). "It is well settled that contracts must be read as a whole, and they must be interpreted in such a manner as to give effect to every provision." *Prudential Ins. Co. v. Corporate Circle, Ltd.*, 658 N.E.2d 1066, 1069 (Ohio Ct. App. 1995).

The district court, "viewing the contract as a whole," *Mead*, 141 F. Supp. 2d at 923, concluded that "the parties did not intend that [the indemnity provision] apply to claims between the parties themselves, and most especially not to claims for

harmless from and against all expenses, costs, charges, damages, claims, suits, losses or liabilities (including attorneys fees) of every kind whatsoever to the extent caused by the negligence of Seller." J.A. at 107 (Terms & Conditions Art. 16).

ABB Power completed work on the Number 12 turbine in December 1995. After three months, a fan-blade failure occurred in the Number 12 turbine generator and caused a shutdown of the turbine. ABB Power undertook repairs pursuant to the contractual warranty and restored the turbine to service on March 12, 1996. The parties entered an agreement on May 21, 1996, "settl[ing] all of the outstanding matters and issues regarding the generator blade failure and subsequent damage to stator coils." J.A. at 48.

On March 6, 1996, Mead and ABB Power entered a written modification of the original contract. ABB Power agreed "to bring the turbine generator to the prefailure condition at their cost," and extended the initial warranty "for a period of one (1) year after completeion [sic] of warranty repairs and start-up." J.A. at 122. The warranty would be according to the terms of the 1993 Terms and Conditions Article 4 warranty. Because the Number 12 turbine was restarted on March 12, 1996, the extended warranty would last until March 12, 1997.

The Number 12 turbine again failed on January 4, 1998, due to an improper pin fitting. The parties' attempts to settle failed, and Mead's insurance carriers, Factory Mutual and National Union, each paid Mead $550,212.00 to compensate for Mead's losses. Mead assigned its rights against ABB Power to the insurance companies.

Appellants filed their first amended complaint against ABB Power in state court on March 10, 2000, alleging breach of contract and seeking indemnity with respect to the 1998 fan-blade failure. Mead alleged that "the fan blade failure of January 4, 1998, was a direct and proximate result of ABB's breach of its cont[r]act with Mead" and that "ABB is in

breach of said contract with Mead in that it has failed to indemnify Mead from all expenses, costs, charges, damages, and losses (including attorneys' fees) caused by the negligence of ABB." J.A. at 11, 14. According to Mead, ABB Power breached its contract in one or more of twenty alleged particulars, and was negligent in eighteen of the same twenty particulars. Mead ostensibly did not bring any cause of action under the warranty provisions of its contracts with ABB Power. ABB Power promptly removed the case to federal court.

On October 20, 2000, ABB Power filed a motion for summary judgment as to all issues. ABB Power argued that "[a]ny claimed damages from the 1998 fan blade failure are barred by the expressed terms of the Warranty provisions of the Contract, which were intended to be the exclusive remedy for such claims" and that the indemnity claims fail as a matter of law because "Plaintiffs have not been forced to indemnify any third-parties in relation to the fan blade failures outlined in the Amended Complaint, and because the claims brought under the 'Indemnity' provision are actually claims falling under the 'Warranty' provision of the Contract which are time barred." J.A. at 60-61.

On April 18, 2001, the district court granted ABB Power's motion for summary judgment as to all causes of action. *Mead Corp. v. ABB Power Generation, Inc.*, 141 F. Supp. 2d 914 (S.D. Ohio 2001). The district court concluded that the breach of contract and indemnity claims were "in substance" breach of warranty claims, and that the warranty had expired on March 12, 1997. *Id.* at 919, 920. Furthermore, the district court concluded that the indemnity provision did not apply to disputes between the parties themselves. *Id.* at 921. Appellants filed a timely notice of appeal.

## II. ANALYSIS

Because this case falls within our diversity jurisdiction, we apply the same law, including choice of law rules, that would

language indicating that it was intended to be the "exclusive remedy for defective workmanship or materials"); *Omaha Home for Boys*, 238 N.W.2d at 473 (describing warranty as an additional, not exclusive, protection).

Because Mead and ABB Power did not include language in the contract indicating that the warranty provision was Mead's exclusive remedy for defective workmanship or materials, we must conclude that plaintiffs stated a cause of action for breach of contract. Therefore, we reverse the district court's grant of summary judgment for ABB Power on the contract claim and remand for further proceedings.

## C. Indemnity

Appellants' second cause of action against ABB Power alleges that "ABB is in breach of said contract with Mead in that it has failed to indemnify Mead from all expenses, costs, charges, damages, and losses (including attorneys' fees) caused by the negligence of ABB" in eighteen particulars. J.A. at 14-15. As with the breach of contract claim, the district court "look[ed] past the label of plaintiffs' indemnification claim" and "[found] that the claim is one for breach of warranty." 141 F. Supp. 2d at 920. The district court concluded "that the indemnity provision in this contract does not apply to the instant dispute between the parties" and granted ABB Power's motion for summary judgment. *Id.* at 921, 923.

Article 16 of the Terms and Conditions requires ABB Power to "indemnify and hold Purchaser and its agents, officers, directors, consignees, employees and representatives harmless from and against all expenses, costs, charges, damages, claims, suits, losses or liabilities (including attorneys fees) of every kind whatsoever to the extent caused by the negligence of Seller." J.A. at 107. Article 31, entitled "Limitation of Liability," refers to Article 16 as follows:

Except for third party claims for injury (including death therefrom) and claims for third party property damage for

We recognize that initially it may seem problematic to permit a contracting party to recover for acts that would have been covered by an expired warranty where the parties expressly intend a warranty to be "exclusive and in lieu of all other warranties." J.A. at 125 (Art. 4.6). Recognizing such an action for breach of contract ostensibly permits the parties to do an end-run around the contract's express limitations of liability. But, although "[i]t is a basic principle of contract law that parties by an express agreement may contract for an exclusive remedy that limits their rights, duties and obligations," the parties must clearly indicate in the contract their intent "to make the stipulated remedy exclusive." *Bd. of Regents v. Wilson*, 326 N.E.2d 216, 220 (Ill. Ct. App. 1975).

Thus, where a "contract fails to expressly exclude the owner's common law remedies, or to limit plaintiff's remedies to those expressly stipulated in the contract," a party can still invoke independent remedies.[2] *Id.* at 222; *see All Seasons Water Users Ass'n v. N. Improvement Co.*, 399 N.W.2d 278, 285 (N.D. 1987); *Omaha Home for Boys v. Stitt Constr. Co.*, 238 N.W.2d 470, 473 (Neb. 1976). Warranties merely establish a specific contractual duty and corresponding right to rectify such defects for a fixed period if "[t]hey neither state an exclusive remedy nor limit the plaintiff from claiming damages as the result of faulty work or materials." *First Nat'l Bank of Akron v. Cann*, 503 F. Supp. 419, 434 (N.D. Ohio 1980), *aff'd*, 669 F.2d 415 (6th Cir. 1982). Where a contract does not limit other obligations imposed by law, courts permit non-warranty actions that would have been covered by the terms of a warranty, even after the warranty has expired. *See, e.g., Ohio Historical Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 342-43 (Ohio Ct. App. 1989) (concluding that a warranty provision "is an additional but not an exclusive remedy" where the provision does not include

---

[2] Plaintiffs cannot, however, require a double recovery for the same injury, even where alternative theories of recovery — such as breach of contract and breach of warranty — are available.

be applied in state courts in the forum state. *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999). Section 42 of the original contract between Mead and ABB Process states:

> Except where the Property is located in a state other than Ohio and the laws of that other state referenced above under Section 13 or the laws with respect to mechanics liens, workers' compensation and other employer-employee relations matters and/or local taxation otherwise require, the Contract and the performance of all of the Work hereunder shall be governed by and construed in accordance with the laws of the State of Ohio.

J.A. at 93-94. Therefore, we will apply Ohio substantive law for the purpose of this appeal.

## A. Standard of Review

We review de novo a district court's order granting summary judgment. *Richardson v. Township of Brady*, 218 F.3d 508, 512 (6th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Because the parties do not dispute the facts, this case is ripe for summary judgment. We only need to determine whether the district court's decision was correct as a matter of law.

## B. Breach of Contract

Appellants argue that the 1998 fan-blade failure was a result of ABB Power's breach of contract. Although the complaint does not purport to assert a breach of warranty claim, the district court concluded that "the claim is actually a disguised breach of warranty claim." 141 F. Supp. 2d at 917. Because the warranty on the Number 12 turbine expired

in March 1997, ten months before the failure in January 1998, the district court concluded that Appellants could not prevail on their claim for "breach of contract." *Id.*

Pursuant to Federal Rule of Civil Procedure 8(f), "[a]ll pleadings shall be so construed as to do justice." We have interpreted Rule 8(f) to "require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) ("looking beyond labels to the substance of the allegations" and concluding that a claim labeled as negligence was in substance a claim for intentional misrepresentation). "[T]he label which a plaintiff applies to his pleading does not determine the nature of the cause of action." *United States v. Louisville & Nashville RR. Co.*, 221 F.2d 698, 701 (6th Cir. 1955).

Nineteen of the twenty particulars cited by Appellants as constituting ABB Power's breach of the contract "revolve around the installation and performance of the turbine."[1] 141 F. Supp. 2d at 920. Furthermore, these particulars fall under the provisions of the amended warranty covering "defects in material and workmanship" and assuring that "[s]ervices will be performed in a workmanlike manner." J.A. at 124 (Art. 4). But although it is true that the warranty would cover the conduct about which Appellants complain, this is not dispositive under Ohio law.

Under Ohio law, "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." *Hunsicker v. Buckeye Union Cas. Co.*, 118 N.E. 2d 922, 924 (Ohio Ct. App. 1953) (quoting 38 Am. Jur. 662 § 20). The United States District

---

[1] The twentieth particular — ABB Power's failure to indemnify Mead — will be addressed separately because it is Appellants' second cause of action against ABB Power.

Court for the Southern District of Ohio has interpreted *Hunsicker* to "merely restate[] the duty imposed on every party to a contract for services" and has noted that "the failure to perform accordingly amounts to negligence or a breach of contract, not a breach of warranty." *Battelle Mem'l Inst. v. Nowsco Pipeline Servs., Inc.*, 56 F. Supp. 2d 944, 953 (S.D. Ohio 1999). In light of this common law duty, breach of contract should be generally available to plaintiffs as an alternative theory of recovery.

Because plaintiffs can generally bring a common law action for breach of contract, we must consider the intent of the parties with respect to the warranty provision. The parties clearly expressed their intention that the amended warranty provisions would be "exclusive and in lieu of all other warranties of quality and performance and results." J.A. at 125 (Art. 4.6). ABB Power further disclaimed all warranties, "including any warranty of merchantability or fitness for a particular purpose." J.A. at 125 (Art. 4.6). But the exclusivity provision only states that the express warranty is the only *warranty* applicable to the contract; it does not state that a claim for breach of warranty is Mead's exclusive *remedy* under the contract.

In fact, not only did the parties fail to express an intent that the warranty would be Mead's exclusive remedy under the contract, but also they expressly contemplated alternative remedies available to Mead. The parties required full compliance both with the terms of the contract and "with all applicable Federal, state or local laws." J.A. at 77 (§ 13). Furthermore, they expressly stated that the rights and remedies granted to Mead under the contract "shall not be exclusive of, but shall be in addition to, any other rights or remedies available at law or in equity or granted in any other part of the Contract." J.A. at 93 (§ 37). In light of this provision, we cannot conclude that Mead's claim for breach of contract was precluded by the contract's warranty provision.