## A00A1001. GEORGIA BANK & TRUST v. CINCINNATI INSURANCE COMPANY.
### (538 SE2d 764)

BLACKBURN, Presiding Judge.

Georgia Bank & Trust (the bank) appeals the trial court's order denying its motion for summary judgment and granting the Cincinnati Insurance Company's (the insurance company's) motion for sum-

---

mary judgment. The bank filed the underlying action after the insurance company failed to honor a forgery claim. The trial court determined that the bank did not present a covered claim under the terms of the banker's blanket bond and granted the insurance company's motion for summary judgment. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). Our review is de novo, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

The bank's claim was made under its blanket bond issued by the insurance company. The claim arose after C. A. and Tommie West defaulted on their obligations to the bank.[2] The Wests had assigned their interests in a savings account with Bartow Employee's Federal Credit Union (credit union) as collateral for the renewal of their obligations with the bank. The bank twice obtained documents from the credit union confirming the minimum amounts in the account and demanding, pursuant to the assignments, a hold on those amounts until a release of the assignments. However, when the Wests defaulted on their obligations, the bank found out that the account confirmations by the credit union were false. The Wests' account with the credit union had never held the minimum amounts represented; instead, the account had a negative balance. Additionally, the credit union's representative's signature on the confirmations was forged by Tommie West, who was the president of the credit union at the time of the forgery.

The bank contends that its loss resulted from the forgery on the confirmation letters and is, therefore, covered under the specific provisions of the contract insuring loss resulting directly from forgery in certain circumstances.[3] The insurance company contends that the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] The facts were submitted to the trial court in a joint statement of undisputed facts.

[3] The blanket bond insurance contract provided, in relevant part, under Insuring Agreement D — Forgery, Alteration and Unauthorized Signatures:

Loss resulting directly from . . . transferring, paying or delivering any funds or property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or property, which instructions or advices purport to have been signed or endorsed by any customer of the insured or by any banking institution but which instructions or advices either bear a signature which is a forgery or have been altered without the knowledge and consent of such customer or banking institution.

Insuring Agreement E — All Risk Forgery, additionally provides, in relevant part:

Loss by reason of the insured (a) having in good faith and in the usual course of business, whether for its own account or the account of others, either gratuitously or

loss resulted not from the forgery of the signature, but the false assurances contained in the confirmation documents. The trial court, agreeing with the insurance company and relying on two cases from the federal courts, determined that under these circumstances the insurance company is not liable when the loss is caused by the nonexistence of assets purported to be assigned by a forged instrument, as opposed to a loss caused by the lack of authenticity of the instrument.

Although there are no Georgia cases that address the issues herein, there are several federal court cases specifically on point, as the trial court recognized. In *Liberty Nat. Bank v. Aetna Life &c. Co.*,[4] the plaintiff bank made two loans — one to Edward Vaughn and one to Vaughn's mother. As security for the loans, Vaughn gave the bank two certificates of deposit (CDs) purportedly issued by National Bank of Commerce, Ltd., an entity which had no assets. Vaughn and his mother subsequently defaulted on the loans, and the CDs proved to be both forged and worthless. The insurer denied coverage of the bank's claim under a blanket policy similar to that at issue herein. The court granted summary judgment to the insurer reasoning that:

> The bond insures that the documents submitted to the bank in connection with a loan are genuine and authentic. If they are not, and a loss is caused thereby, the bonding company guarantee[d] the loss. On the other hand, the bonding company does not guarantee the truth of said documents. If they are not truthful, and a loss results therefrom, it is not guaranteed. The allocation of such losses undoubtedly arises from the practicality of the situation. A bank cannot protect against counterfeit and forged documents. It can, on the other hand, investigate the assertions made therein through credit checks, appraisals, title searches, financial statements and the like.

*Id.* at 863. See also *KW Bancshares v. Syndicates of Underwriters at Lloyd's.*[5] The court determined that the bank's loss

was not caused by the lack of authenticity or genuineness of

---

otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability or otherwise acted upon any security, document, or other written instrument which proves to have been a forgery or to have been altered or raised or counterfeited or lost or stolen.

[4] *Liberty Nat. Bank v. Aetna Life &c. Co.*, 568 FSupp. 860 (N.J. 1983).

[5] *KW Bancshares v. Syndicates of Underwriters at Lloyd's*, 965 FSupp. 1047 (W.D. Tenn. 1997) (court found no coverage under blanket bond after bank allowed forged letters confirming the payment of a nonexistent bonus to be used as collateral for the loan — same rationale applied, loss caused by nonexistence of asset, not the forgery of the document).

the documents. On the contrary, the loss was caused by the fact that the statements contained in the documents were not true. The assets represented thereby did not exist. If the documents were authentic and their signatures genuine and authorized, the loss nonetheless would have occurred. The failure of the security was not because they were counterfeit or forged, but solely because the assets purportedly represented thereby were non-existent. This loss falls upon the Bank and not the bonding company by the terms and intent of the bond.

*Liberty Nat. Bank*, supra at 863. Additionally, in *Republic Nat. Bank of Miami v. Fidelity &c. Co. of Md.*,[6] the court pointed out that "a banker's blanket bond is not a policy of credit insurance and does not protect the bank when it simply makes a bad business deal." (Punctuation omitted.) Id.

In the present case, the blanket bond did not protect the bank from its bad business deal. Even if the signature on the confirmation was authentic, the bank would have suffered the loss, because the assets did not exist. Furthermore, the bank's responsibility to investigate the assets of its borrowers was never delegated to the insurance company. Therefore, the trial court correctly granted summary judgment to the insurance company.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED AUGUST 28, 2000.

*Ledbetter & Smith, James F. Ledbetter*, for appellant.
*Howard, Clark & Mercer, Glen W. Clark, Jr.*, for appellee.

---

[6] *Republic Nat. Bank of Miami v. Fidelity &c. Co. of Md.*, 894 F2d 1255, 1263 (11th Cir. 1990).