BERNICE B. DONALD, Circuit Judge,
dissenting.
While I agree that under Michigan’s choice-of-law rules, Michigan law applies, I do not agree that we can apply the Michigan Uniform Commercial Code to this case because application of the Michigan Uniform Commercial Code is limited. Michigan law makes clear that the Michigan Uniform Commercial Code only applies to “banks that are members of or participants in the Federal Reserve System.” Colo. Nat’l Bank v. First Nat’l Bank & Trust Co., 459 F.Supp. 1366, 1368 (W.D.Mich.1978). The statutory canon ex-pressio unius est exclusio alterius (the mention of one thing is the exclusion of another) is instructive here. Marx v. Gen. Revenue Corp., — U.S. -, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013) (recognizing that the expressio unius est exclu-sio alterius canon applies when it is “fair to suppose that Congress considered the unnamed possibility and meant to say no”); see also TRW, Inc. v. Andrews, 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (same); Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702, 706 (6th Cir.2009) (same). Only members or participants of the Federal Reserve System are covered by the Michigan Uniform Commercial Code. Canadian banks, like the one on which the fraudulent checks were written, are not members or participants of the Federal Reserve System and, therefore, are not covered by the Code. This negative inference is bolstered by the fact that other courts recognize that what qualifies as final payment varies with foreign instruments, and that final payment is not determined by the Uniform Commercial Code adopted in that state. See generally, Mer *652 cantile Bank & Trust Co. v. Hunter, 31 Colo.App. 200, 501 P.2d 486 (1972) (determining that a check drawn on a British bank and returned 129 days after its deposit was provisional); Gossels v. Fleet Nat’l Bank, 453 Mass. 366, 902 N.E.2d 370, 374 (2009) (determining that a check drawn on a Grand Cayman bank and returned twenty-one days after its deposit was provisional); Cumis Mut. Ins. Soc’y, Inc. v. Rosol, 2011 WL 589397 (N.J.Super.Ct.App.Div. Feb. 22, 2011) (finding that a check drawn on a Canadian bank and returned twenty-four days after its deposit was provisional). As such, what triggers final payment in this case is not governed by the Michigan Uniform Commercial Code or the midnight deadline rule in M.C.L. § 440.4302.[1]
Therefore, we properly turn to Michigan common law to interpret the bond provisions. Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 815 (6th Cir.2004) (determining that state law applies to the interpretation of insurance contracts); Morley v. Auto. Club of Mich., 458 Mich. 459, 581 N.W.2d 237, 240 (1998) (holding that the construction and interpretation of an insurance contract is a question of law). Generally, rules of contract construction apply when interpreting insurance policies. Universal Image Prod., Inc. v. Chubb Corp., 703 F.Supp.2d 705, 707 (E.D.Mich.2010). A fidelity insurance bond, however, is not a typical insurance policy. Flagstar Bank, FSB v. Fed. Ins. Co., No. 05-70950, 2006 WL 3343765, at *2 (E.D.Mich. Nov. 17, 2006), aff'd, 260 Fed.Appx. 820, 820-825 (6th Cir.2008). Rather, it is the product of a collaborative effort between the underwriter and the insured financial institution. Id. The standard form bond at issue here has been designed to deter courts from interpreting coverage broader than intended by the parties. See id. Where the policy language is clear, a court must enforce the specific language of the contract and not create ambiguity where none exists. See also Pac. Emp’rs Ins. Co. v. Mich. Mut. Ins. Co., 452 Mich. 218, 549 N.W.2d 872, 875 (1996); Heniser v. Frankenmuth Mut. Ins. Co., 449 Mich. 155, 534 N.W.2d 502, 505 (1995); see also First Nat’l Bank of Manitowoc v. Cincinnati Ins. Co., 485 F.3d 971, 977 (7th Cir.2007) (acknowledging that the traditional rule of construing any ambiguity in favor of coverage does not apply because the standard fidelity bond is drafted by representatives from both the banking and insurance industries). The policy as I read it is clear. The provisional payments for the three Canadian checks were properly revoked and never became final; thus, they were not finally paid.[2]
Moreover, we must only enforce those obligations actually assented to by the parties. Wilkie v. Auto-Owners Ins. Co., 469 Mich. 41, 664 N.W.2d 776, 787 (2003). Foreign checks pose a greater risk than domestic checks due to the fact that foreign checks are not subject to the Uniform *653 Commercial Code’s midnight deadline rule. See generally EEOC v. Regions Fin. Corp., No. H-07-2491, 2010 WL 173371, at *2-3 (S.D.Tex. Jan. 12, 2010). The American Bankers Association, which co-drafted the Bond, explains:
[FJoreign banks, such as Canadian banks, are not subject to the UCC or the Federal Reserve CC. Instead, Canadian banks’ right to revoke settlement may be as long as one year from the date that the item is discovered as fraudulent, regardless of when the fraud is discovered. Because the discovery period can be indefinite, an item is never finally paid like domestic items. Therefore, foreign checks, are unavoidably subject to Exclusion (o) of the Financial Institution Bond. The Foreign Check Rider remedies this issue.
See ABA Insurance Services, Foreign Check Rider, available at http://www.abais. com/lforeign-check-rider.aspx.
Progressive did not agree to cover such risk, and Seaway failed to negotiate a Foreign Check Rider to provide the coverage that it now improperly seeks. As the Eastern District of Michigan observed in another case involving the application of an exclusion in a financial institution bond modeled after Standard Form 24, “Both [the insured bank] and [the insurer] are large, sophisticated financial institutions. They are well aware of the risks of the transactions in which they are involved and can easily bargain with each other to allocate those risks.” Flagstar Bank, FSB, 2006 WL 3343765, at *2. Seaway failed to bargain for insurance coverage for fraudulent Canadian checks. We simply cannot rewrite an insurance policy under the guise of interpretation. McKusick v. Travelers Indem. Co., 246 Mich.App. 329, 632 N.W.2d 525, 531 (2001).
For this reason, I would hold that the bond does not provide coverage in this situation. I am concerned that the majority’s opinion essentially condones a court’s rewriting of the terms of the fidelity insurance bond, and could render meaningless the terms of other similar bonds where banks negotiated and paid for foreign check coverage. In the present case, Seaway receives a gifted windfall as a resulted of a judicially revised insurance policy. For these reasons, I respectfully dissent.

. A payor bank is accountable for a demand item presented on and received by the bank "whether properly payable or not if the bank ... retains the item beyond midnight of the banking day of receipt without settling for it or ... does not pay or return the item or send notice of dishonor until after its midnight deadline.” M.C.L. § 440.4302.

. The Bond expressly excludes from coverage losses resulting from payments made or withdrawals from a depositor’s account involving items of deposit that are not "finally paid.”(" [T]his bond does not cover: ... (o) loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving items of deposit which are not finally paid, for any reason....”) Canadian, unlike domestic, instruments can always be reversed in the instance of fraud. 1-8A Doing Business in Canada § 8A.01(c), (g).